## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LEAH PALLADENO, ANTHONY
PALLADENO JR., SUSAN WHALEN,
and ABEL DELGADO,

              Plaintiffs,                    Hon.

v.                                  Case No.

CITY OF FLINT; TIMOTHY JOHNSON,
Chief of Flint Police Department, in his
official and individual capacities;           **COMPLAINT**
KRISTOPHER JONES, a Flint police
officer, in his individual capacity; BOBBY    JURY TRIAL DEMANDED
FOWLKES, a Flint police officer, in his
individual capacity; SCOTT WATSON, a
Flint police officer, in his individual
capacity; FLINT POLICE OFFICER #768,
a Flint police officer, in his individual
capacity; and UNNAMED FLINT POLICE
OFFICERS, in their individual capacities,

              Defendants.
_____/

Bonsitu Kitaba-Gaviglio (P78822)
Michael J. Steinberg (P43085)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6800
msteinberg@aclumich.org
bkitaba@aclumich.org

Gregory T. Gibbs (P26440)
Alec S. Gibbs  (P73593)
Ann A. Lerche (P33331)
*Of Counsel,*
Cooperating Attorneys, ACLU Fund
  of Michigan
Law Office of Gregory T. Gibbs
717 S. Grand Traverse Street
Flint, MI 48502
(810) 239-9470
Greggibbs51@sbcglobal.net
annlerche@gmail.com

Glenn M. Simmington (P33626)
Cooperating Attorney, ACLU Fund of
  Michigan
Law Office of Glenn M. Simmington
503 S. Saginaw St., Suite 1000
Flint, MI 48502
(810) 600-4212
simmingtonlaw@gmail.com

gibbsale@gmail.com
Muna Jondy (P70334)
Cooperating Attorney, ACLU
  Fund of Michigan
Muna Jondy Law Office
4400 Saginaw St., Suite 1360
Flint, MI 48507
(810) 820-8691
muna@jondylaw.com

*Attorneys for Plaintiffs*

_____/

## **COMPLAINT**

Plaintiffs Leah Palladeno, Anthony Palladeno Jr., Susan Whalen, and Abel Delgado, by their attorneys, bring this Complaint against Defendants, the City of Flint, Flint Police Chief Timothy Johnson, in his individual and official capacities, and several Flint police officers for the reasons that follow:

## **INTRODUCTION**

1.     This civil action arises from the unlawful arrest of four innocent persons who attended a public town hall meeting scheduled by the City of Flint on April 20, 2017 at a church, to convey information about an important decision concerning the future of the City of Flint's drinking water supply and to solicit community feedback.

2.     Flint police officers and armed security guards in military gear and bulletproof vests stood outside of the sanctuary doors and stopped town hall

attendees from entering the meeting without first removing their hats as required by church rules and policy. Those who objected were denied entry into the public meeting.

3.     Police Chief Timothy Johnson began the meeting by making it clear that since the public meeting was in a church, he and his officers were going to enforce church rules regarding dress and etiquette and that Flint residents must behave differently than in other meetings.

4.     Chief Johnson told the crowd that men, but not women, must remove their hats in conformance with church rules. He also issued a harsh warning: "[D]on't be in here trying to disrupt this meeting, because if you do I'm going to escort you out and I'm only going to take you to the back door and then you're going to jail. I'm not going to play with nobody tonight."

5.     Flint police officers executed Chief Johnson's orders and began arresting attendees when they expressed their frustration to city officials about the public meeting being held in a religious institution where religious rules were enforced by the police.

6.     City of Flint mayor Karen Weaver, who organized the public meeting and instructed the Flint police to arrest alleged rule breakers, was present during Chief Johnson's opening remarks and the arrests.

7.      The officers forcefully escorted Leah Palladeno and her husband, Anthony Palladeno Jr., from the meeting. Once outside in the hallway, when Ms. Palladeno told a Flint City Councilman with whom she was familiar that the meeting was "bullshit," police officers grabbed her, forced her hand behind her back, and slammed her head down repeatedly on a desk.

8.      Several additional persons, including the remaining Plaintiffs, were arrested while outside the church for expressing their disapproval of the meeting and the arrests.

9.      In total, Flint Police Department officers arrested six individuals at the town hall meeting for engaging in First Amendment-protected speech, including verbally protesting the government's use of police power, making statements critical of the government during public comment period, expressing approval of comments made by others during the meeting, criticizing police action, using an expletive in front of an officer outside the meeting, and/or videotaping officers outside of the meeting.

10.     Although Plaintiffs exercised their First Amendment right to express displeasure with the actions of the City of Flint during the public comment part of the Flint Town Hall meeting, at no time did they disrupt the meeting.

11.     Similarly, although Plaintiffs exercised their First Amendment right outside of the sanctuary to express their displeasure with the arrests and treatment

4

of their fellow Flint residents, at no time did they impede or interfere with the ability of the police to conduct an arrest.

12.    All six individuals were detained overnight in retaliation for their speech. They spent the night in Flint City Lockup and were released the next morning pending further investigation.

13.    Requests for warrants and prosecution were referred to the office of the Genesee County Prosecuting attorney but after reviewing the requests and underlying reports, the Genesee County prosecutor publically declined to press criminal charges against the individuals.

14.    Plaintiffs bring this action, pursuant to 42 U.S.C. § 1983, to vindicate their rights to free speech and to be free of unreasonable search and seizures under the First, Fourth and Fourteenth Amendments. Additionally, they seek to vindicate their rights under substantially related state law theories. Plaintiffs seek damages as well as declaratory and injunctive relief to prevent defendants from violating their rights in the future.

## **PARTIES**

15.    Plaintiff Leah Palladeno is a resident of the City of Flint in Genesee County, which falls within the Eastern District of Michigan.

16.    Plaintiff Anthony Palladeno Jr. is a resident of the City of Flint in Genesee County, which falls within the Eastern District of Michigan.

17.     Plaintiff Susan Whalen is a resident of the City of Detroit in Wayne County, which falls within the Eastern District of Michigan.

18.     Plaintiff Abel Delgado is a resident of the City of Flint in Genesee County, which falls within the Eastern District of Michigan.

19.     Defendant City of Flint is a municipality organized and existing under the laws of the State of Michigan, located within the Eastern District of Michigan.

20.     Defendant Timothy Johnson is, or was at all times relevant to this Complaint, the City of Flint police chief of the Flint Police Department. Chief Johnson is sued in his official and individual capacities.  Upon information and belief, he resides within the Eastern District of Michigan.

21.     Defendant Kristopher Jones is, or was at all times relevant to this Complaint, a police officer with the Flint Police Department. Officer Jones is sued in his individual capacity. Upon information and belief, he resides within the Eastern District of Michigan.

22.     Defendant Bobby Fowlkes is, or was at all times relevant to this Complaint, a police officer with the Flint Police Department. Officer Fowlkes is sued in his individual capacity. Upon information and belief, he resides within the Eastern District of Michigan.

23.     Defendant Scott Watson is, or was at all times relevant to this Complaint, a police officer with the Flint Police Department. Officer Watson is

6

sued in his individual capacity. Upon information and belief, he resides within the Eastern District of Michigan.

24.     Defendant Officer 768 is, or was at all times relevant to this Complaint, a police officer with the Flint Police Department. Officer 768 is sued in his individual capacity. Upon information and belief, he resides within the Eastern District of Michigan.

25.     Defendants Unnamed Flint Police Officers are, or were at all times relevant to this Complaint, City of Flint police officers employed by the Flint Police Department. They are all the police officers, in addition to Defendants Johnson, Jones, Fowlkes, Watson, and Officer 768, who participated in the arrests at the Flint town hall on April 20, 2017. They are being sued in their individual capacities. Their numbers and identities are currently unknown to Plaintiffs, and Plaintiffs intend to amend this Complaint to name them individually as soon as their numbers and identities have been disclosed.

## JURISDICTION AND VENUE

26.     This Court has jurisdiction over this matter under 28 U.S.C. §§1331 and 1343, because federal questions are presented in this action under the First, Fourth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983. This court has jurisdiction to provide declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. This Court has supplemental jurisdiction under 28

U.S.C. § 1367 because Plaintiffs' state law claims form part of the same case or controversy as Plaintiffs' Section 1983 claims over which this Court has original subject matter jurisdiction.

27.    Venue is proper under 28 U.S.C. §1391(b)(1) and (2) because this is a judicial district where all defendants reside and where a substantial part of the events or omissions giving rise to the claims occurred or will occur.

## STATEMENT OF FACTS

28.    Since 2014, Flint's water supply has been contaminated by lead, E. coli, TTHMs – a carcinogenic byproduct of chlorine – and bacteria that causes Legionnaires disease. Flint residents have experienced significant trauma from this contamination and the government's ensuing responses. The Flint City Council, the mayor, the state, and citizens of Flint have publically debated the future recovery of Flint's drinking water at public forums known as town hall meetings since 2014.

29.    In November 2016, Flint mayor Karen Weaver endorsed a plan involving upgrades to Flint's water treatment plant to maintain the Flint River as the source of the city's drinking water. Mayor Weaver switched positions in March 2017 when she announced support for a plan to stay connected to Detroit water through the Great Lakes Water Authority. Her decision prompted a heated debate amongst city council, the mayor, and the state. Flint residents had their first

opportunity to weigh in on the mayor's decision during a town hall meeting scheduled by city officials at 5:30pm on April 20, 2017 at House of Prayer Missionary Baptist Church.

30.     Mayor Karen Weaver instructed the Flint police and its Chief to be present at the meeting and instruct participants on the code of conduct.

31.     Leah Palladeno, Anthony Palladeno Jr., Susan Whalen, and Abel Delgado ("Plaintiffs") attended this meeting for the purpose of learning about the mayor's decision and to voice their opinions on this issue.

32.     Each Plaintiff was personally affected by the Flint water crises, felt strongly about this matter of important national concern, and wanted to let their elected representatives and other government officials know how they felt.

33.     Additionally, Plaintiff Susan Whalen was employed by Flint Rising, a non-profit organization working to advocate for those who were impacted by the Flint water crises, and was required to attend the meeting as part of her job.

34.     Upon arriving at the town hall, Plaintiffs and other attendees encountered Flint police officers in heavy armor and bulletproof vests and armed security guards in suits standing at the entrance of the sanctuary.

35.     Flint police officers required the attendees, regardless of gender, to remove their hats before entering in order to enforce the rules of the religious facility used for the public meeting.

36.    While all others were required to take off their head gear, at least one male who professed a need to wear a hat based on his religious beliefs was allowed to enter the sanctuary with a hat on.

37.    Upon arriving at the church, Plaintiff Anthony Palladeno Jr. spoke to the armed officers about their enforcement of religious rules on attendees of the town hall meeting and tried to resolve the situation outside the sanctuary.

38.    However, the police officers insisted that attendees comply with the religious practices of the House of Prayer Missionary Baptist Church and Plaintiffs had no choice but to comply with the rule in order to gain entrance into the town hall.

39.    The Flint Police Department adopted the religious practices of the House of Prayer Missionary Baptist Church as the rules of conduct for public participation in the town hall on April 20, 2017.

40.    Mayor Karen Weaver directed Defendant Johnson and Defendant police officers to arrest individuals who violated the church's rules of conduct.

41.    Defendant Police Chief Timothy Johnson opened the town hall by informing the audience that the police would be enforcing church etiquette. He told the audience that men must remove their hats in church but that women could keep their hats on.

42.     Chief Johnson further sternly warned the audience in the church that the police approach would be different that night.

43.     He specifically told them not to "be in here trying to disrupt this meeting, because if you do I'm going to escort you out and I'm only going to take you to the back door and then you're going to jail. I'm not going to play with nobody tonight."

44.     Defendant police officers, all or some of whom are trained elite members of Flint Police Department's Crime Area Target Team (C.A.T.T.), acted on the orders and direction of Defendant Chief Johnson at all times during the April 20, 2017 meeting and when arresting Plaintiffs for expressing protected First Amendment speech.

## The Speech and Arrests of the Palladenos

45.     During the public comment period, Plaintiffs Anthony Palladeno Jr. and Leah Palladeno waited in line and, when it was their time to speak, voiced their concerns about the Flint Mayor's position on the water supply and other issues related to problems with Flint's contaminated water. Others at the meeting also voiced their concerns and frustrations to city officials.

46.     At one point during the public forum, a resident voiced her disagreement with the City of Flint hosting a public meeting in a church and some members of the audience applauded in agreement with the sentiment.

11

47.    Shortly thereafter, other audience members voiced their opposition to the presence of militarized police in a town hall meeting in a church who were also enforcing church rules.

48.    Flint police officers escorted two people out of the sanctuary and arrested at least one participant who expressed his disagreement.

49.    Plaintiff Anthony Palladeno Jr. observed the attendee being physically forced out of the town hall meeting by Defendant Kristopher Jones and without interfering asked the officer to not put his hands on the attendee.

50.    When this request was ignored, Plaintiff Anthony Palladeno Jr. turned to Flint mayor Weaver and asked her to address this issue with her security, but she simply stared at him without responding.

51.    Plaintiff Anthony Palladeno Jr. waited in line to publically address the panel of officials. When it was his turn, he expressed frustration with the city's decision to contract with the Great Lakes Water Authority. The audience expressed agreement with Mr. Palladeno Jr.'s sentiments.

52.    Shortly thereafter, Plaintiff Leah Palladeno took her turn to publically address the town hall panel. She spoke out against a panel member who insinuated that the reason for her high water bills was because her neighbors were not paying their bills.

53.    While Mrs. Palladeno was addressing the panel, Defendant Jones ordered Plaintiff Anthony Palladeno Jr. to leave the premises.

54.    Plaintiff Anthony Palladeno Jr. advised Defendant Jones he was waiting for his wife to finish her public comment.

55.    Immediately after Plaintiff Leah Palladeno finished with her comment, Defendant Jones started to physically push Plaintiff Leah Palladeno out of the sanctuary.

56.    At this point, Plaintiff Anthony Palladeno Jr. asked Defendant Jones to take his hands off of his wife.

57.    Defendant Jones ignored his request and continued to physically escort them out of the sanctuary and into the church common area towards the back door.

58.    Plaintiff Leah Palladeno has a disability which qualifies her for handicap parking.

59.    As she was being physically escorted towards the back door of the church, Plaintiff Leah Palladeno told Defendant Jones that she was handicapped and that her car was parked in front.

60.    As they turned towards the front door, Plaintiff Leah Palladeno saw Flint City Councilman Eric Mays. A couple days before, she had spoken to Mr.

13

Mays about her expectations of the town hall. She and Mr. Mays maintained a friendly professional relationship.

61.     When she saw Mr. Mays in the hallway, Plaintiff Leah Palladeno turned around to him and said, "look, bullshit."

62.     In reaction to Ms. Palladeno using the word "bullshit" in a church, Defendant Jones and other police officers grabbed Plaintiff Leah Palladeno, restrained her arm behind her back, and slammed her head down on a nearby table two times. Another officer kicked her feet open.

63.     Plaintiff Leah Palladeno was then forcibly handcuffed, pulled outside of the church, patted down, and placed in a City of Flint police van where two other town hall attendees had already been detained.

64.     As Plaintiff Leah Palladeno was being detained in the Flint Police van in the parking lot that accessed the church, Plaintiffs Anthony Palladeno Jr., who was standing many feet away and without interfering with the arrest, verbally objected to his wife's arrest and the way his wife was being treated.

65.     After his wife was put into a police van, Mr. Palladeno Jr. left the scene and went to his vehicle.

66.     However, Defendant Officer Kristopher Jones came over to Mr. Palladeno Jr.'s car and, with no explanation, handcuffed him and placed him under arrest.

14

67.     Several bystanders videotaped the Palladenos' arrests.

68.     Plaintiff Leah Palladeno was expelled from the public meeting because of the constitutionally-protected comments she made during public comment time criticizing the City of Flint, for among other things, its decision to hold a public meeting in a church.

69.     Plaintiff Anthony Palladeno Jr. was expelled from the public meeting because of the constitutionally-protected comments he made during public comment time criticizing the City of Flint, and for verbally objecting to the arrest of his wife Leah Palladeno and friend.

**The speech and arrest of Abel Delgado**

70.     Plaintiff Abel Delgado attended the town hall meeting on April 20, 2017 to learn about the mayor's decision to continue contracting with the Great Lakes Water Authority for Flint's drinking water. He did not attend the meeting to protest.

71.     When Plaintiff Delgado entered the church sanctuary, he was approached by a Flint police officer and told to remove his hat.

72.     He refused and told the Defendant unnamed police officer that he could not enforce church rules at a governmental meeting.

73.     The Defendant officer insisted and because Plaintiff Delgado felt powerless against the police in that moment, he removed his hat.

15

74.     Plaintiff Delgado observed his friend speaking to police in the hallway outside of the sanctuary. He left the sanctuary to join them and began discussing the police's enforcement of church rules at the meeting. His belongings, including his hat, bag and coat remained in the sanctuary.

75.     Plaintiff Susan Whalen was outside the sanctuary with a co-worker and Plaintiff Delgado joined them. Defendant Bobby Fowlkes was standing in the foyer guarding the doors. Plaintiff Delgado addressed Defendant Fowlkes using strong language and criticized the actions of the police in enforcing the church's rules against them.

76.     Defendant Fowlkes threatened to arrest Plaintiff Delgado for using profanity in front of women and children.

77.     When Plaintiff Delgado saw his friends being escorted out of the church, he exited the building to the rear of the church. He saw his friends being arrested and put in a police van.

78.     At that time, a member of the Michigan House of Representatives approached Plaintiff Delgado and expressed his disagreement with the police's actions. He offered to testify on the arrestees' behalf if necessary.

79.     Plaintiff Delgado went back into the church and soon witnessed Plaintiff Leah Palladeno being slammed onto a table by Defendants Jones and unnamed police officers.

16

80.     He looked over his shoulder to see Defendant Fowlkes grab Plaintiff Whalen and slam her into the metal bar of the door.

81.     Plaintiff Delgado followed Plaintiff Leah Palladeno and the Defendant officers out of the building.

82.     While maintaining his distance and not interfering with the arrests, he told the police that they were supposed to serve the people and that what they were doing was wrong.

83.     Plaintiff Delgado was speaking to Defendant officer Scott Watson outside in the church parking lot away from the church when he was arrested.

84.     Using strong language, Mr. Delgado told the officers that the arrests or expulsion of individuals from the town hall contradicted the interests of the people and were "worthless." He also called the officers "pigs" and "fucking fascists."

85.     At this time Defendant Watson advised Mr. Delgado that he was required to leave the church property because he was "cussing at the church" and "disrespecting the church."

86.      Immediately thereafter, a Defendant unnamed police officer came up behind him, handcuffed, patted down and arrested Plaintiff Delgado. A bystander videotaped Plaintiff Delgado's arrest.

87.     Plaintiff Delgado became extremely afraid because he was approached by the Defendant unnamed officer from behind. He feared that he might be shot or otherwise assaulted by the officer.

## The Speech and Arrest of Susan Whalen

88.     Plaintiff Susan Whalen arrived at the town hall meeting at the House of Prayer Missionary Baptist Church at approximately 5:30 p.m. with her coworkers and observed heavily armed police officers and Defendant Johnson at the doors of the church sanctuary.

89.     The officers were directing attendees to remove their hats and prohibiting anyone from entering if they refused to do so.

90.     Plaintiff Whalen was directed to remove her hat and she complied in order to gain access to the town hall meeting in the church sanctuary.

91.     While in the sanctuary, Plaintiff Whalen asked her friend to get the badge number of the police officer who told her to take off her hat. When her friend went outside, Ms. Whalen observed Defendant Johnson push her friend. She left the sanctuary to join her friend in the hallway. Her friend questioned Defendant Johnson about why he was enforcing a church rule during a governmental meeting.

18

92.    During this time Plaintiff Whalen asked another officer about enforcement of the church rules and was informed by a Defendant police officer that the rule about hats came from one of the church pastors.

93.    While in the area between the double doors, Plaintiff Whalen observed Plaintiffs Anthony Palladeno Jr. and Leah Palladeno being led out of the sanctuary and Leah Palladeno's subsequent arrest.

94.    As Plaintiff Whalen was trying to get back into the hallway of the church to videotape and observe Mrs. Palladeno's arrest, Defendant Officer Bobby Fowlkes, without warning, slammed her body on the metal bar between the doors causing Plaintiff Whalen to scream in pain.

95.    After momentarily releasing Plaintiff Whalen, Defendant Fowlkes once again grabbed Plaintiff Whalen, turned her around, and pushed her outside through the church doors before releasing her again.

96.    After being forcibly removed from the church by Defendant Fowlkes, Plaintiff Whalen observed Defendant police officers arresting Anthony Palladeno Jr. and began videotaping the arrest.

97.    Plaintiff Anthony Palladeno Jr. advised the officers that he had his dog locked in his motorhome and someone needed to release the dog.

98.    Plaintiff Anthony Palladeno Jr. gave Plaintiff Whalen his keys and she walked away from the arrest to another corner of the parking lot.

99.     Plaintiff Whalen was taking a moment to collect herself at the far end of the parking lot when she was approached by Defendant Fowlkes and Defendant Officer 768. They notified her that she was under arrest.

100.    Plaintiff Whalen was puzzled and questioned the reason for the arrest. Plaintiff Whalen advised Defendants that she needed to use a bathroom first and that she needed her purse to which Defendants Fowlkes and Officer 768 responded that if she did not immediately submit to arrest she would be charged with resisting arrest.

101.    Plaintiff Whalen submitted to the arrest and was eventually placed in the City of Flint police van in handcuffs with Plaintiff Leah Palladeno and two others. Defendant Fowlkes searched Ms. Whalen's purse. A bystander videotaped Ms. Whalen's arrest.

### **Plaintiffs Incarcerated in the Flint City Lockup**

102.    All four Plaintiffs were transported by Defendant police officers to the Flint City Lockup for incarceration.

103.    Upon arrival at the Flint City Lockup, Plaintiffs Leah Palladeno and Whalen were required to strip down and surrender their clothing. They were given button-up jumpsuits to replace their clothing.

104.    Plaintiff Whalen's jumpsuit did not button up all the way and left portions of her body exposed.

20

105. Both women were placed in separate holding cells. There were ten or more women in Plaintiff Whalen's cell. A few women in that cell were detoxing and one woman was continuously vomiting.

106. Conditions of the female cells were very poor.

107. Plaintiffs Leah Palladeno and Whalen were exposed to rotting food, vomit, spilt milk, hair, and dirt all over the cell floor.

108. The cell was cold and the two women were only given blankets for six hours during the night. The blankets had large holes in them.

109. Ms. Whalen was only able to sleep on a bunk for a few hours after another woman vacated the bunk.

110. In addition, they were exposed in a naked state to surrounding male and female guards and other prisoners in the Flint City Lockup while they used the toilet.

111. Because of the jumpsuit uniform, and because the toilet was in the open, whenever Plaintiffs Leah Palladeno and Whalen had to use the toilet, they were forced to sit naked in front of everyone.

112. At one point during the night when Plaintiff Whalen was using the toilet, a male guard came around to where he could see in through the cell bars.

113. He stood there for approximately 20 seconds, observing Plaintiff Whalen and then left.

114.   Plaintiffs Abel Delgado and Anthony Palladeno Jr. were not given pillows or blankets. Mr. Delgado was forced use water bottles as a pillow.

115.   Susan Whalen and Anthony Palladeno Jr. were asked to give DNA samples.

116.   The next morning, on April 21, 2017, after approximately 15 hours in jail, all six individuals were released pending further investigation.

<u>**Allegations Specific to Each Plaintiff**</u>

*Plaintiff Susan Whalen*

117.   Plaintiff Whalen was arrested, handcuffed, patted down, searched, and incarcerated by Defendant Flint police officers because she exercised her constitutionally-protected right to criticize  Defendants' activities during the town hall meeting.

118.   Plaintiff Whalen was arrested, handcuffed, patted down, searched, and incarcerated by Defendant Flint police officers because she was exercising her constitutionally-protected right to videotape the Flint police.

119.   Defendants did not have probable cause to arrest or incarcerate Plaintiff Whalen.

120.   Plaintiff Whalen was arrested once for expressing First Amendment protected speech and is at risk to be arrested again. The Flint Police Department

has not disavowed its policy to enforce church rules during public meetings and continues to hold meetings in religious buildings.

121.   Prior to her arrest on April 20, 2017, Ms. Whalen was an advocate for her rights and the rights of Flint community members in the wake of the Flint Water crisis. The arrest has caused a chilling effect on her speech and continued activism. Plaintiff Whalen took a leave of absence from her job which required attending Flint public meetings and has not attended a public meeting in Flint since the April 20, 2017 incident. In the future, she would like to participate in public meetings in Flint, namely because her mother still lives in Flint and is personally affected by the water. But, Ms. Whalen reasonably fears being arrested by Flint police for conduct protected by the U.S. Constitution if she attends another meeting.

122.   Plaintiff Whalen is especially afraid of attending another public meeting held in a church for fear that the police would again arrest her for violating the church's etiquette rules.

123.   Unless and until Defendants are restricted by an order of this Court, Defendants will continue to enforce the church etiquette rules against the public in public meetings held in churches.

124.   Plaintiff Whalen is suffering irreparable injury from the Defendants' adoption and enforcement of religious etiquette rules when holding public

meetings in churches, and will continue to suffer irreparable injury unless and until the threat of enforcement is lifted.

**Plaintiff Leah Palladeno**

125.  Plaintiff Leah Palladeno was expelled from the public meeting because of the constitutionally-protected comments she made during public comment time criticizing the City of Flint.

126.  Plaintiff Leah Palladeno was assaulted, arrested, handcuffed, patted down, searched and incarcerated because of the constitutionally-protected statement she made to Councilman Mays in the hallway to characterizing the town hall meeting as "bullshit."

127.  Defendants did not have probable cause to arrest or incarcerate Plaintiff Leah Palladeno.

128.  Plaintiff Leah Palladeno was arrested once for expressing FirstAmendment protected speech and is at risk to be arrested again. The Flint Police Department has not disavowed its policy to enforce church rules during public meetings and continues to hold meetings in religious buildings.

129.  Plaintiff Leah Palladeno attended countless public meetings concerning the Flint water crisis since 2014. Her arrest on April 20, 2017 caused a chilling effect on her speech. Since April 20, 2017, Leah Palladeno has not

attended a single public meeting in Flint because she reasonably fears being arrested by Flint police for conduct protected by the U.S. Constitution.

130.   Plaintiff Leah Palladeno is especially afraid of attending another public meeting held in a church for fear that the police would arrest her again for violating the church's etiquette rules.

131.   Unless and until Defendants are restricted by an order of this Court, Defendants will continue to hold public meetings in churches and enforce the church's etiquette rules against the public.

132.   Plaintiff Leah Palladeno is suffering irreparable injury from the Defendants' adoption and enforcement of religious etiquette rules when holding public meetings in churches, and will continue to suffer irreparable injury unless and until the threat of enforcement is lifted.

*Plaintiff Anthony Palladeno Jr.*

133.   Plaintiff Anthony Palladeno Jr. was arrested, handcuffed, patted down, searched, and incarcerated for exercising his constitutional right to criticize the government during the public comment period at the public meeting on April 20, 2017.

134.   Plaintiff Anthony Palladeno Jr. was arrested, handcuffed, patted down, searched, and incarcerated for exercising his constitutional right to speak out

against the arrests of attendees during the public meeting and Defendants' actions during the town hall.

135.   Defendants did not have probable cause to arrest or incarcerate Plaintiff Anthony Palladeno Jr.

136.   Plaintiff Anthony Palladeno Jr. was arrested once for expressing FirstAmendment protected speech and is at risk to be arrested again. The Flint Police Department has not disavowed its policy to enforce church rules during public meetings and continues to hold meetings in religious buildings.

137.   Plaintiff Antony Palladeno Jr. is an actively engaged citizen in Flint. He has attended countless public meetings concerning the Flint water crisis since 2014. His arrest on April 20, 2017 caused a chilling effect on his speech and continued attendance at Flint public meetings. Since April 20, 2017, Mr. Palladeno Jr. has only attended a handful of city meetings and is very hesitant to speak out at public comment period – something he routinely did before the arrest. He even fears being in the presence of Flint's mayor and her bodyguard.

138.   Plaintiff Anthony Palladeno Jr. is especially afraid of attending another public meeting held in a church for fear that the police would arrest him for violating the church's etiquette rules.

139.   Unless and until Defendants are restricted by an order of this Court, Defendants will continue to hold public meetings in churches and enforce the church's etiquette rules against the public.

140.   Plaintiff Anthony Palladeno Jr. is suffering irreparable injury from the Defendants' adoption and enforcement of religious etiquette rules when holding public meetings in churches, and will continue to suffer irreparable injury unless and until the threat of enforcement is lifted.

### *Plaintiff Abel Delgado*

141.    Plaintiff Abel Delgado was arrested, handcuffed, patted down, searched, and incarcerated for exercising his constitutional right to criticize the police and speak out against the Defendants' activities during the town hall.

142.   Defendants did not have probable cause to arrest or incarcerate Plaintiff Delgado.

143.   Plaintiff Delgado was arrested once for expressing FirstAmendment protected speech and is at risk to be arrested again. The Flint Police Department has not disavowed its policy to enforce church rules during public meetings and continues to hold meetings in religious buildings.

144.   Plaintiff Delgado is an actively engaged citizen in Flint and has attended countless public meetings concerning the Flint water crisis since 2014. His arrest on April 20, 2017 caused a chilling effect on his speech and continued

attendance at Flint public meetings. Since April 20, 2017, Mr. Delgado has only attended a few city meetings and did not speak at public comment period because he was reasonably afraid of being arrested for conduct protected by the U.S. Constitution.

145.   Plaintiff Delgado is especially afraid of attending another public meeting held in a church for fear that the police would arrest him again for violating the church's etiquette rules.

146.   Unless and until Defendants are restricted by an order of this Court, Defendants will continue to hold public meetings in churches and enforce the church's etiquette rules against the public.

147.   Plaintiff Abel Delgado is suffering irreparable injury from the Defendants' adoption and enforcement of religious etiquette rules when holding public meetings in churches, and will continue to suffer irreparable injury unless and until the threat of enforcement is lifted.

<u>**COUNT ONE:**</u>
<u>**VIOLATION OF THE FIRST AMENDMENT**</u>
<u>**FREEDOM OF SPEECH**</u>
<u>**42 U.S.C. § 1983**</u>

148.   Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs as if fully set forth herein.

149.   The First Amendment to the U.S. Constitution provides that "Congress shall make no law . . . abridging the freedom of speech." The First

28

Amendment is incorporated against the States by the Fourteenth Amendment.

Persons violating the First Amendment under color of state law are liable at law

and in equity under 42 U.S.C. § 1983.

150.   The rights to criticize the government and government's use of power

are clearly established rights under the First Amendment.

151.   The right to videotape the police in public is a clearly established right

under the First Amendment.

152.   Defendants City of Flint, Johnson, Jones, Fowlkes, Watson, Officer

768, and Unnamed Flint Police Officers, while acting under color of state law,

violated the clearly established rights of Plaintiffs Anthony Palladeno Jr., Leah

Palladeno, Susan Whalen, and Abel Delgado to freedom of speech when they

arrested them at the House of Prayer Missionary Baptist Church on April 20, 2017

for engaging in First Amendment-protected speech.

153.   Karen Weaver, as mayor and final decision-maker for the

municipality has power by virtue of state law to establish governmental policy.

154.   Mayor Weaver ordered and/or authorized Defendant Johnson and

Defendant Flint police officers to take action at the town hall, to arrest individuals

for violating the church's rules of conduct and for engaging in First Amendment-

protected speech, which created an "official policy" of the City.

155.   Mayor Weaver officially set up the town hall and invited Defendant Johnson to open the meeting. She continued to observe, without acting or interfering, when Defendant Johnson and Defendant Flint police officers began arresting Plaintiffs.

156.   Defendant Chief Johnson, as final decision-maker for the Flint Police Department, ordered and/or authorized Defendant Flint police officers to arrest Plaintiffs for violating the church's etiquette rules and for engaging in First Amendment-protected speech.

157.   The "official policy" of the City and Flint Police Department to arrest participants of the town hall meeting for violating the church's etiquette rules and for expressing First Amendment-protected speech was either written or unwritten, intended to fix a plan of action to be followed by Defendants in similar situations, or was a tailored course of action adapted to this particular meeting.

158.   Defendants' actions created and will continue to create a chilling effect on Plaintiffs' willingness to speak freely which, left unchecked, have restricted Plaintiffs and others from participating in City of Flint public meetings in the future.

159.   At all times relevant to this action, Plaintiffs' First Amendment rights were clearly established and Defendant Flint police officers acted objectively and unreasonably under the circumstances.

160.    As a direct and proximate result of Defendants' actions, Plaintiffs suffered physical and emotional injuries, including but not limited to, pain and suffering, bodily injuries, emotional distress, anxiety, fear, intimidation, embarrassment, reputational damage, mortification, loss of liberty interest, monetary losses, and other injuries and damages.

**COUNT TWO:**
**VIOLATION OF THE FOURTH AMENDMENT**
**UNREASONABLE SEARCH AND SEIZURE AND UNLAWFUL ARREST**
**42 U.S.C. § 1983**

161.    Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs as if fully set forth herein.

162.    The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures and arrests without probable cause. The Fourth Amendment is incorporated against the States by the Fourteenth Amendment. Persons violating the Fourth Amendment under color of state law are liable at law and in equity under 42 U.S.C. § 1983.

163.    Defendants City of Flint, Johnson, Jones, Fowlkes, Officer 768, and Unnamed Flint Police Officers, while acting under color of state law, violated the clearly established rights of Plaintiffs Anthony Palladeno Jr., Leah Palladeno, Susan Whalen, and Abel Delgado to be free from unreasonable seizures by unlawfully detaining them at House of Prayer Missionary Baptist Church on April 20, 2017.

31

164.   Karen Weaver, as mayor and final decision-maker for the municipality has power by virtue of state law to establish governmental policy.

165.   Mayor Weaver ordered and/or authorized Defendant Johnson and Defendant Flint police officers to take action at the town hall, to arrest individuals for violating the church's rules of conduct and for engaging in First Amendment-protected speech, which created an "official policy" of the City.

166.   Mayor Weaver officially set up the town hall and invited Defendant Johnson to open the meeting. She continued to observe, without acting or interfering, when Defendant Johnson and Defendant Flint police officers began arresting Plaintiffs.

167.   Defendant Chief Johnson, as final decision-maker for the Flint Police Department, ordered and/or authorized Defendant Flint police officers to arrest Plaintiffs for violating the church's etiquette rules and for engaging in First Amendment-protected speech.

168.   Specifically, Defendants City of Flint, Johnson, Jones, Fowlkes, Officer 768, and Unnamed Flint Police Officers deprived Plaintiffs of their rights under the Fourth Amendment to the U.S. Constitution by:

  a.  Detaining Plaintiffs without reasonable suspicion that any individual Plaintiff had engaged in criminal activity;

b.   Arresting Plaintiffs without probable cause to believe that any

violation or crime had been committed or was likely to be committed;

c.   Searching Plaintiffs without a reasonable belief that any individual

Plaintiff was armed and presently dangerous;

d.   Searching Plaintiffs in the absence of a lawful arrest and without any

particularized probable cause that a crime had occurred;

e.   Using excessive and unreasonable force in making their unlawful

arrests when Plaintiffs never resisted Defendants and did not provide

Defendants any reason to use such force;

f.   Searching and seizing Plaintiffs' personal property, including but not

limited to, articles of clothing, coats, accessories, wallets, purses,

money, and other possessions without probable cause, a search

warrant or voluntary consent; and

g.   Incarcerating Plaintiffs without probable cause.

169.   Plaintiffs challenge as unreasonable in violation of the Fourth

Amendment the fact of their detention as well as its conditions and its duration.

170.   The "official policy" of the City and Flint Police Department to arrest

participants of the town hall meeting for violating the church's etiquette rules and

for expressing First Amendment-protected speech was either written or unwritten,

intended to fix a plan of action to be followed by Defendants in similar situations, or was a tailored course of action adapted to this particular meeting.

171.   Defendants actions directly and proximately caused the injuries and deprivations suffered by Plaintiffs.

172.   Defendants acted knowingly and intentionally without good faith and in reckless disregard and deliberate indifference to Plaintiffs' constitutional rights.

173.   As a direct and proximate result of Defendants' actions, Plaintiffs suffered physical and emotional injuries, including but not limited to, pain and suffering, bodily injuries, emotional distress, anxiety, fear, intimidation, embarrassment, reputational damage, mortification, loss of liberty interest, monetary losses, and other injuries and damages.

## COUNT THREE:
## VIOLATION OF THE FOURTH AMENDMENT
## EXCESSIVE FORCE
## 42 U.S.C. § 1983

### *Plaintiffs Leah Palladeno and Susan Whalen*

174.   Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs as if fully set forth herein.

175.   The Fourth Amendment prohibition on unreasonable seizures encompasses the right to be free from excessive force.

176.   Defendant Kristopher Jones and one or more Defendant Unnamed Flint Police Officer(s), while acting under color of state law, violated the clearly

established right of Plaintiff Leah Palladeno to be free from unreasonable seizures by using excessive force against her at the House of Prayer Missionary Baptist Church on April 20, 2017.

177. One or more Defendant Unnamed Flint Police Officer(s), while acting under color of state law, violated the clearly established right of Plaintiff Susan Whalen to be free from unreasonable seizures by using excessive force against her at the House of Prayer Missionary Baptist Church on April 20, 2017.

178. Defendants' actions directly and proximately caused the injuries and deprivations suffered by Plaintiffs Leah Palladeno and Susan Whalen.

179. Defendants acted knowingly and intentionally without good faith and in reckless disregard and deliberate indifference to Plaintiffs Leah Palladeno and Susan Whalen's constitutional rights.

180. As a direct and proximate result of Defendants' actions, Plaintiffs Leah Palladeno and Susan Whalen suffered physical and emotional injuries, including but not limited to, pain and suffering, bodily injuries, emotional distress, anxiety, fear, intimidation, embarrassment, reputational damage, mortification, loss of liberty interest, monetary losses, and other injuries and damages.

### COUNT FOUR:
### ASSAULT AND BATTERY
### IN VIOLATION OF MICHIGAN COMMON LAW

*Plaintiffs Leah Palladeno and Susan Whalen*

181.   Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs as if fully set forth herein.

182.   Defendants Jones, Officer 768, and Unnamed Flint Police Officers assaulted and battered Plaintiffs Leah Palladeno and Susan Whalen in the unlawful arrests of their persons on April 20, 2017.

183.   Defendants Jones, Officer 768, and Unnamed Flint Police Officers owed a duty to Plaintiffs Leah Palladeno and Susan Whalen not to physically touch them without consent and to refrain from assaulting and battering them as herein alleged.

184.   Defendants Jones, Officer 768, and Unnamed Flint Police Officers breached the aforesaid duties.

185.   As a direct and proximate result of Defendants' actions, Plaintiffs Leah Palladeno and Susan Whalen suffered physical and emotional injuries, including but not limited to pain and suffering, bodily injuries, emotional distress, anxiety, fear, and intimidation.

**COUNT FIVE:**
**WRONGFUL ARREST**
**IN VIOLATION OF M.C.L. § 764.15**

186.   Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs as if fully set forth herein.

36

187.   Defendant officers participated in warrantless, illegal, and unjustified arrests of Plaintiffs.

188.   Defendant officers unlawfully restrained Plaintiffs' liberty and freedom of movement.

189.   Defendant officers intended to confine Plaintiffs when they placed Plaintiffs in handcuff restrains to restrict their mobility, ordered them under arrest, commanded them not to move, and incarcerated them for an extended period of time.

190.   Defendant officers' warrantless arrest of Plaintiffs was executed without probable cause in violation of MCL 764.15.

191.   Defendant officers' actions resulted in the confinement of the Plaintiffs.

192.   Defendant officers' actions were intentional, unjustified, and objectively unreasonable under the circumstances.

193.   As a direct and proximate result of Defendant officers' actions, Plaintiffs suffered physical and emotional injuries, including but not limited to, pain and suffering, bodily injuries, emotional distress, anxiety, fear, intimidation, embarrassment, reputational damage, mortification, loss of liberty interest, monetary losses, and other injuries and damages.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

a.  Declare that Defendants' conduct during the arrests on April 20, 2017 at House of Prayer Missionary Baptist Church violated Plaintiffs' constitutional rights under the First, Fourth and Fourteenth Amendments, and under state law;

b.  Grant a permanent injunction enjoining Defendants from enforcing religious etiquette rules at public meetings held in churches and detaining, searching or arresting a person for expressing protected First Amendment speech at public meetings;

c.  Grant a permanent injunction enjoining Defendants from maintaining a custom, policy or practice of adopting and enforcing religious rules of etiquette when holding a public meeting in a religious building;

d.  Grant a permanent injunction ordering Defendants to attend training on use of force, and the First and Fourth Amendments;

e.  Award Plaintiffs compensatory and punitive damages;

f.  Award Plaintiffs reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

g.  Grant any other relief the Court deems appropriate.

Respectfully submitted,


s/_____
Bonsitu Kitaba-Gaviglio (P78822)
Michael J. Steinberg (P43085)
*Attorneys for Plaintiffs*
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6814
msteinberg@aclumich.org
bkitaba@aclumich.org


s/_____
Glenn M. Simmington (P33626)
Cooperating Attorney, ACLU Fund of
  Michigan
*Attorney for Plaintiffs*
Law Office of Glenn M. Simmington
503 S. Saginaw St., Suite 1000
Flint, MI 48502
(810) 600-4212
simmingtonlaw@gmail.com

s/_____
Gregory T. Gibbs (P26440)
Alec S. Gibbs  (P73593)
Ann A. Lerche (P33331)
*Attorneys for Plaintiffs*
Cooperating Attorneys, ACLU Fund
  of Michigan
Law Office of Gregory T. Gibbs
717 S. Grand Traverse Street
Flint, MI 48502
(810) 239-9470
Greggibbs51@sbcglobal.net
annlerche@gmail.com
gibbsale@gmail.com

s/_____
Muna Jondy (P70334)
Cooperating Attorney, ACLU Fund of
  Michigan
*Attorney for Plaintiffs*
Muna Jondy Law Office
4400 Saginaw St., Suite 1360
Flint, MI 48507
(810) 820-8691
muna@jondylaw.com


Date:

**JURY DEMAND**

Plaintiffs demand a jury on all issues so triable.


Respectfully submitted,


s/ *Bonsitu Kitaba-Gaviglio*
Bonsitu Kitaba-Gaviglio (P78822)
Michael J. Steinberg (P43085)
*Attorneys for Plaintiffs*
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6814
msteinberg@aclumich.org
bkitaba@aclumich.org

s/ *Glenn M. Simmington*
Glenn M. Simmington (P33626)
Cooperating Attorney, ACLU Fund of
  Michigan
*Attorney for Plaintiffs*
Law Office of Glenn M. Simmington
503 S. Saginaw St., Suite 1000
Flint, MI 48502
(810) 600-4212
simmingtonlaw@gmail.com

s/ *Gregory T. Gibbs*
Gregory T. Gibbs (P26440)
Alec S. Gibbs  (P73593)
Ann A. Lerche (P33331)
*Attorneys for Plaintiffs*
Cooperating Attorneys, ACLU Fund
  of Michigan
Law Office of Gregory T. Gibbs
717 S. Grand Traverse Street
Flint, MI 48502
(810) 239-9470
Greggibbs51@sbcglobal.net
annlerche@gmail.com
gibbsale@gmail.com

s/ *Muna Jondy*
Muna Jondy (P70334)
Cooperating Attorney, ACLU Fund of
  Michigan
*Attorney for Plaintiffs*
Muna Jondy Law Office
4400 Saginaw St., Suite 1360
Flint, MI 48507
(810) 820-8691
muna@jondylaw.com


Dated: April 12, 2018